Carter Dillard, CBN 206276
cdillard@aldf.org
Christopher Berry, CBN 283987
cberry@aldf.org
ANIMAL LEGAL DEFENSE FUND
170 East Cotati Avenue
Cotati, CA 94931
Telephone: 707.795.0165
Facsimile: 707.795.7280

Attorneys for Plaintiffs

# THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND, a nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE and the Honorable TOM VILSACK, its Secretary, and FOOD SAFETY AND INSPECTION SERVICE and the Honorable ALFRED V. ALMANZA, its Administrator,<br><br>Defendants. | Case No.: 3:15-cv-5063<br><br>**COMPLAINT FOR INJUNCTIVE, DECLARTORY, AND MANDAMUS RELIEF** |

COMPLAINT FOR INJUNCTIVE, DECLARTORY, AND MANDAMUS RELIEF - 1

# INTRODUCTION

1. This case involves the mislabeling of a diseased and adulterated poultry product: force-fed foie gras. Through an official inspection legend, this product is certified to consumers as "wholesome" by the United States Department of Agriculture ("USDA"), the very agency that bears a statutory duty to shield consumers from false and misleading poultry product labeling, and the human food supply from diseased and unhealthful poultry products. This mislabeling is the subject of a rulemaking petition that has been sitting on the agency's desk for over four years.

2. Under the Poultry Products Inspection Act ("PPIA"), the USDA and its sub-agency, the Food Safety and Inspection Serve ("FSIS"), are charged with protecting "the health and welfare of consumers…by assuring that poultry products distributed to them are wholesome, not adulterated, and properly marked, labeled, and packaged." 21 U.S.C. § 451. Poultry products that are adulterated are condemned and diverted from entering the food supply. Id. at § 458(a)(2); 9 C.F.R. § 381.78 (May 16, 1972).

3. When a poultry carcass or part exhibits an inflammatory process, a general systemic disturbance, a septicemic or toxemic disease, or toxins dangerous to human health, the product is adulterated and should be condemned. 9 C.F.R. §§ 381.83-86 (May 16, 1972). Foie gras production, which involves the force-fed enlargement of the duck liver, induces a metabolic disease and commonly results in

COMPLAINT FOR INJUNCTIVE, DECLARTORY, AND MANDAMUS RELIEF - 2

the onset of all of the conditions mentioned in these regulations. Foie gras thus poses an ongoing and hidden threat to the safety of those who consume it.

4. Despite these dangers, USDA has not only failed to stop the entry of foie gras into the food supply, but has also flouted its statutory obligation to prohibit false and misleading labeling with respect to foie gras. The appearance on foie gras labels of USDA's official inspection legend, averring that the product has been "Inspected for wholesomeness" by the agency, misleads consumers in two ways. First, consumers are directly misled by the agency's insistence that the product, which has its origins in a diseased animal and carries threats to human health, is "wholesome." And second, consumers are indirectly misled by the absence on the product label of any warning that would qualify the inspection legend by disclosing foie gras' pathological origins.

5. Plaintiff Animal Legal Defense Fund ("ALDF") first sought to address the issue of the agency's obligations with regard to this diseased food product in 2007, when it filed a rulemaking petition, along with several co-petitioners, with the FSIS seeking to exclude foie gras from the food supply as an adulterated product. ALDF and its co-petitioners argued that foie gras is not fit for human consumption under the PPIA. The petition was denied by FSIS on August 27, 2009 (*see* Appendix A, Petition Record, Exhibit G, Letter from USDA, FSIS, to Humane Soc'y of the U.S.

COMPLAINT FOR INJUNCTIVE, DECLARTORY, AND MANDAMUS RELIEF - 3

(August 27, 2009) [hereinafter, Ex. G]), and the denial challenged on May 9, 2012 in the United States District Court for the Central District of California.[1]

6. In the meantime, over four years ago—on September 8, 2011— ALDF submitted a subsequent rulemaking petition to FSIS seeking the imposition of mandatory labeling on force-fed foie gras products to prevent continued consumer deception while the USDA permitted foie gras to be sold. [Petition and Exhibits attached hereto as Appendix A; hereinafter, "Plaintiff's Petition"].

7. FSIS has yet to respond to Plaintiff's Petition or to commence any action that would terminate further review of ALDF's request for foie gras labeling. FSIS's unreasonable delay of over four years in responding to a straightforward rulemaking request violates the Administrative Procedure Act ("APA").

8. ALDF thus files this Complaint against the USDA, and the Honorable Tom Vilsak, its Secretary ("USDA"), and the FSIS and the Honorable Alfred V. Almanza, its Administrator (collectively "Defendants"), seeking declaratory relief stating that the Defendants have violated the APA and mandamus or other injunctive relief to compel Defendants to respond substantively to Plaintiff's Petition.

9. In support of this Complaint, Plaintiff alleges as follows:

---

[1] The District Court granted the Defendant's Motion for Judgment on the Pleadings and denied the Plaintiffs' Motion for Summary Judgment. That judgment was appealed, and the parties have just completed oral argument before the Ninth Circuit Court of Appeals. *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, No. 2:12-CV-4028-ODW, 2013 WL 1191736 (C.D. Cal. Mar. 22, 2013), *appeal docketed*, No. 13-55868 (9th Cir. May 20, 2013).

COMPLAINT FOR INJUNCTIVE, DECLARTORY, AND MANDAMUS RELIEF - 4

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action and the parties thereto pursuant to 28 U.S.C. § 1331, which provides the district courts with original jurisdiction over civil actions arising under the laws of the United States.

11. This action arises under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("APA"). All available administrative remedies have been exhausted and the challenged agency actions are subject to this Court's review pursuant to 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial relief thereof") and § 706(1) ("The reviewing court shall … compel agency action unlawfully withheld or unreasonably delayed.").

12. The relief requested is authorized by the judicial review provision of the APA, 5 U.S.C. § 702, 28 U.S.C. § 1361 (mandamus), 28 U.S.C. § 2201 (declaratory judgment), and 28 U.S.C. § 2202 (injunctive relief). There is a present and actual controversy between the parties.

13. Venue lies in this district under 28 U.S.C. § 1391(e) as Plaintiff maintains its headquarters within this district and as a substantial portion of the events or omissions giving rise to the claims alleged herein occurred in this district.

## INTRADISTRICT ASSIGNMENT

14. Assignment to the San Francisco Division of the Northern District of California is proper under Northern District Local Rule 3-2, as a substantial portion

COMPLAINT FOR INJUNCTIVE, DECLARTORY, AND MANDAMUS RELIEF - 5

of the events or omissions giving rise to the claims alleged herein occurred in Sonoma County, and no real property is at issue.

## PARTIES

**A.    Plaintiff**

15.    Plaintiff Animal Legal Defense Fund ("ALDF") is a national nonprofit organization dedicated to using the legal system to protect the lives and advance the interests of animals. ALDF executes this mission in a variety of ways including participating in the political process, promoting legislation, educating the public, and litigating issues when necessary.

16.    A central part of ALDF's mission is the protection of animal health for the sake of both animal welfare and food safety. ALDF has been involved in the protection of animals used and sold in commercial enterprises, and has an interest in ensuring that consumers receive accurate and complete information about the animal products they purchase. As a part of this mission, ALDF educates consumers about the health risks associated with cruelly produced animal products.

17.    ALDF's members include consumers who eat meat and poultry products from duck and geese. ALDF and its members rely on the Defendants' proper and timely enforcement of its labeling regulations to assess whether products they mark with their official legend of inspection are in fact "wholesome," as the legend indicates.

18.    ALDF's members seek to receive accurate and complete information about the products they purchase, to ensure the wholesomeness and safety of the

COMPLAINT FOR INJUNCTIVE, DECLARTORY, AND MANDAMUS RELIEF - 6

food they consume, and to avoid patronizing products with negative animal welfare effects. These members are influenced by the inclusion of government assurances on labels when making food purchases.

19. When the government's mark of inspection communicates its belief in the safety and wholesomeness of products made with foie gras, when in fact those products have their origins in diseased and sickly animals, such false assurances harm ALDF's members and frustrate ALDF's work to provide complete information to its members and to consumers.

20. FSIS' failure to condemn foie gras and continued allowance of consumer deception through the use of the USDA inspection legend on foie gras products, without any accompanying warning label, has injured ALDF. This failure has forced ALDF to divert its limited resources and devote staff time to educating consumers on the true nature of these products, informing consumers that they in fact come from animals intentionally induced to develop a debilitating disease that carries threats to human health.

21. ALDF first pursued its 2007 petition and legal action, and later filed the 2011 rulemaking petition seeking changes to foie gras labeling to correct the aforementioned consumer deception. ALDF's communications department has spent significant resources raising awareness about the animal welfare consequences and threat to human health posed by foie gras, and foie gras labels' deficiencies. The organization has sent email alerts to members to contact USDA to support the petition. And ALDF attorneys have spent many hours researching the law in

COMPLAINT FOR INJUNCTIVE, DECLARTORY, AND MANDAMUS RELIEF - 7

relation to foie gras production and labeling seeking to persuade Defendants to appropriately change their policy.

22. ALDF could have avoided these expenditures if Defendants had been abiding by their statutory duty with respect to poultry product labeling. Defendants' violations of the PPIA—its refusal to properly label foie gras, and its failure to take action on Plaintiff's Petition—have thus frustrated ALDF's mission and caused ALDF to incur losses including costs paid for such consumer education efforts and diverted staff time.

23. Staff resources have been diverted from other activities that would better further ALDF's mission of protecting the lives and advancing the interests of animals, including: (1) submitting comments and petitions to administrative agencies to improve the content and enforcement of laws against animal cruelty, (2) initiating targeted litigation to improve the welfare of animals used in systematized food production, (3) producing informational materials on the legal status of animals, and (4) advocating for legislation to recognize a heightened legal status of animals.

24. The legal violation alleged in this Complaint has thus injured and continues to injure the interests of ALDF and its members. Granting the relief requested herein would redress these injuries by compelling the USDA to respond to Plaintiff's Petition and complete the rulemaking requested, or otherwise conclude the matter presented.

**B.     Defendants**

25.     Defendant USDA is the primary agency charged under the Poultry Products Inspection Act ("PPIA") with ensuring that poultry products are wholesome and properly marked and labeled. 21 U.S.C. §§ 451 *et seq*. The Honorable Tom Vilsak is its Secretary.

26.     Defendants USDA and FSIS are charged with promulgating rules and regulations, including those for labeling poultry products, and for monitoring those labels or markings that mislead or confuse consumers. *See* 21 U.S.C. § 455.

27.     Defendant Alfred V. Almanza, as Administrator of FSIS, is charged under the PPIA with promulgating rules and regulations, including those for labeling poultry products.

## STATUTORY BACKGROUND

**A.     Adulteration**

28.     The PPIA requires that "the health and welfare of consumers be protected by assuring that poultry products distributed to them are wholesome, *not adulterated*, and properly marked, labeled, and packaged." 21 U.S.C. § 451 (emphasis added) (as amended by the Wholesome Poultry Products Act of 1968, Pub. L. No 90-492, § 2, 82 Stat. 791). It further prohibits commercial trade in "any dead, dying, disabled, or *diseased poultry* or parts of the carcasses of any poultry that died otherwise by slaughter" unless the Secretary "assure[s] that such poultry, or the unwholesome parts or products thereof, will be prevented from being used for human food." 21 U.S.C. at § 460(d) (emphasis added).

COMPLAINT FOR INJUNCTIVE, DECLARTORY, AND MANDAMUS RELIEF - 9

29. The PPIA defines as "adulterated" products consisting "in whole or in part of any filthy, putrid, or decomposed substance or [that are] *for any other reason unsound, unhealthful, unwholesome, or otherwise unfit for human food.*" *Id.* at § 453(g)(3) (emphasis added). Adulterated products must be condemned, and cannot be used in the human food supply. *Id.* at §§ 455(c); 458(a)(2); 9 C.F.R. § 381.78.

30. So as to prevent the introduction of adulterated poultry products into the food supply, the PPIA and FSIS regulations require the ante-mortem inspection of poultry and the post-mortem inspection of poultry carcasses. 21 U.S.C. § 455(a), (b); 9 C.F.R. §§ 381.70 (May 16, 1972); 381.76 (May 16, 1972).

31. Poultry carcasses or parts thereof that bear evidence of an abnormal physiological state, septicemic or toxemic disease, an inflammatory process, general systematic disturbance, and any disease characterized by the presence of toxins dangerous to the consumer must be condemned under agency regulations. 9 C.F.R. §§ 381.78; 381.83-86. Poultry carcasses and parts of carcasses that are found to *not* be adulterated are allowed for use as human food. *Id.* at § 381.79 (May 16, 1972).

**B. Labeling**

32. Aside from stopping adulterated poultry products from entering the food supply, another of the PPIA's chief purposes is preventing false and misleading labeling of poultry products. *See* 21 U.S.C. § 451 (PPIA's purpose is to protect consumers "by assuring that poultry products distributed to them are…properly marked, labeled, and packaged").

COMPLAINT FOR INJUNCTIVE, DECLARTORY, AND MANDAMUS RELIEF - 10

33. Inspected and passed poultry products must be labeled, and the contents of such labels is dictated by FSIS regulations, and must be approved by the agency pursuant to the PPIA. 21 U.S.C. §§ 457; 458(b); 9 C.F.R. § 381.115 (May 16, 1972); 381.131 (May 16, 1972).

34. "Misbranded" products may not be sold for use as human food. 21 U.S.C § 458(a)(2). The Act defines a product as "misbranded" when its "its labeling is false or misleading in any particular." *Id.* § 453(h)(1); 457(c). Agency regulations further provide that "[n]o statement, word, picture, design, or device which is false or misleading in any particular *or conveys any false impression* or gives *any false indication of* origin, identity, or *quality*, shall appear on any label." 9 C.F.R. § 381.129(b) (May 16, 1972).

35. The PPIA charges the Secretary or Administrator of FSIS, when encountering false or misleading labeling, to "direct that such use be withheld unless the marking, labeling, or container is modified in such manner as he may prescribe so that it will not be false or misleading." *Id.* at § 457(d); 9 C.F.R. § 381.130 (May 16, 1972).

C. **Official Inspection Legend**

36. USDA regulations further require that federally inspected and passed poultry products bear the agency's "official inspection legend." 21 U.S.C.A. § 453(m). This is prominent legend on the product package or label specifies that such products have been "Inspected for wholesomeness by U.S. Department of Agriculture." *Id.*; 9 C.F.R. §§ 381.96 (May 16, 1972); 381.123(a) (May 16, 1972).

COMPLAINT FOR INJUNCTIVE, DECLARTORY, AND MANDAMUS RELIEF - 11

1    37.     The legend is the official symbol by which USDA communicates that it
2 has inspected the poultry product and passed it as safe—not adulterated—under
3 the PPIA. *Id.* The legend cannot be used on poultry products which do not qualify
4 for such mark under the regulations, and cannot appear on any poultry product
5 label without the approval of the FSIS Administrator. 9 C.F.R. §§ 381.131 (May 16,
6 1972); 381.136(b) (May 16, 1972).

## FACTUAL BACKGROUND

**A.    Force-Fed Foie Gras**

38.     Foie gras, or "fat liver" in French, is the enlarged liver product brought about by the forced feeding of ducks and geese. To produce fat liver, employees of foie gras companies forcibly thrust pipes down the necks and into the throats of ducks and geese to deliver nutritionally deficient foods in quantities far surpassing the amount a bird would normally and healthfully consume. This process is repeated two to three times a day for two to four weeks, but does not extend beyond that, as producers fear the high mortality rates that will result.

39.     FSIS regulations require the condemnation of poultry carcasses or parts where evidence indicates the presence of various disorders that threaten human health. Specifically, FSIS orders condemnation of poultry where indications of an abnormal physiological state, septicemic or toxemic disease, inflammatory process, general systemic disturbance, or toxins deemed dangerous to consumers are shown. 9 C.F.R. §§ 381.83-86. *All of these conditions are common to ducks in foie gras production.*

COMPLAINT FOR INJUNCTIVE, DECLARTORY, AND MANDAMUS RELIEF - 12

40.     Indeed, forced feeding of birds for the production of foie gras intentionally induces hepatic lipidosis, a metabolic disease diagnosed in animals with more than five percent liver fat. Birds used in foie gras production are induced to have what the USDA has conceded is an altered physiological state (*see* Ex. G), with livers that contain up to sixty-five percent fat.

41.     Force fed birds commonly develop blood disorders that render their consumption dangerous to human health. Septicemia, the presence of bacteria in the blood that is associated with a severe infection, is one disorder common in birds produced for foie gras. The severe impairment of the liver also contributes to the inducement of toxemia, the presence of toxins in the blood.

42.     Foie gras force-feeding also commonly induces general systemic disturbance, a disorder that has a significant and complete effect on bird's health that requires condemnation of its carcass. Hepatic lipidosis is just one example of a systemic disturbance.

43.     Coupled with the presence of inflammatory process in foie gras birds, which develop an inflammation of the small intestine that commonly manifests at the end of their first week of being force-fed, foie gras production often and predictably results in numerous conditions that would typically require condemnation of poultry products under the PPIA.

44.     Foie gras may also induce disease in those who consume it. The protein fibers in foie gras can enhance the onset of Secondary Amyloidosis, a fatal disease to humans. Amyloid disease is known to be susceptible to cross-species

COMPLAINT FOR INJUNCTIVE, DECLARTORY, AND MANDAMUS RELIEF - 13

1  transmission, with humans at risk of contracting a variant of Creutzfeld-Jakob
2  Disease from beef products derived from cows with Bovine Spongiform
3  Encephalopathy ("Mad Cow Disease").

**B.    Plaintiff's Rulemaking Petitions and Agency Response**

45.    In 2007, ALDF submitted a petition for rulemaking to the USDA to promulgate regulations categorizing force-fed foie gras as an adulterated product under the PPIA, thereby declaring it unfit for human consumption and requiring its condemnation. In 2009, the FSIS rejected the petition, writing, "FSIS has determined that foie gras made from the livers of force-fed poultry is not an adulterated and diseased product and is not 'unsound, unhealthful, unwholesome, or otherwise unfit for human food' under the Poultry Products Inspection Act." *See* Ex. G.

46.    ALDF challenged the petition's denial in the United States District Court for the Central District of California in May 2012. The District Court granted the Defendant's Motion for Judgment on the Pleadings and denied the Plaintiffs' Motion for Summary Judgment as moot, on the basis that it lacked subject matter jurisdiction because ALDF's petition was rulemaking was in fact a request for enforcement that was committed to agency discretion by law. *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, No. 2:12-CV-4028-ODW, 2013 WL 1191736 (C.D. Cal. Mar. 22, 2013) ("*ALDF v. USDA*"); *Heckler v. Chaney*, 470 U.S. 821 (1985). ALDF appealed that judgment, and the Ninth Circuit recently heard oral argument from the parties. *ALDF v. USDA*, Case No. 13-55868 (9th Cir.).

COMPLAINT FOR INJUNCTIVE, DECLARTORY, AND MANDAMUS RELIEF - 14

47. The Defendants' arbitrary refusal to promulgate rules regulating foie gras as an adulterated product has also resulted in the continued risk of misleading consumers, who mistakenly believe that all products whose labels bear the USDA's official legend of inspection are not diseased or derived from diseased animals.

48. To protect against this consumer deception in the face of agency inaction, Plaintiff filed the instant rulemaking petition on September 8, 2011 (*see* Appendix A), seeking regulations requiring the agency to withhold its official inspection legend for foie gras products unless they contain a label disclosure stating, "NOTICE: foie gras products are derived from diseased birds."

49. Although FSIS acknowledged receipt of Plaintiff's Petition on October 13, 2011 [attached hereto as Appendix B], Plaintiff has yet to receive a substantive response from the agency more than four years later. Indeed, contrary to their statutory mandate to promulgate rules and regulations to address the deceptive labeling of poultry products, the Defendants have ignored Plaintiff's Petition entirely. Despite foie gras products' pathological origin and threat to human health, the agencies continue to permit them to bear the USDA's official inspection legend. *See* Ex. G.

50. Through this legend, Defendants affirmatively relay a belief in the *safety* of their consumption. This assurance both directly misleads, as noted above, and, in failing to provide an accompanying warning label, conceals material information from consumers about foie gras' diseased origins.

COMPLAINT FOR INJUNCTIVE, DECLARTORY, AND MANDAMUS RELIEF - 15

51.     Defendants' failure to address foie gras mislabeling stands in derogation of their obligation under the PPIA to police against misleading and deceptive labeling of poultry products.

## C.     FSIS and the USDA have Unreasonably Delayed In Responding to Plaintiff's Petition

52.     Despite the APA's requirement that an agency issue a "prompt" response to a petition, the Defendants have, for more than four years, failed to initiate rulemaking procedures or otherwise issue a substantive response to Plaintiff's Petition. This delay can only be described as unreasonable, given the straightforward request and ample evidence provided to support it.

53.     The USDA is charged under the PPIA to withhold marking and labeling that is misleading and to require such changes as would rectify the deception. In the context of commercial speech and labeling, the Supreme Court has held that misleading statements can be made through assertions and omissions. *Zauderer v. Office of Disciplinary Counsel of Sup. Ct. of Ohio*, 105 S.Ct. 2265, 2281-83, 471 U.S. 626, 651-53 (1985) (finding that the omission of information material to a consumer's decision to engage in a business transaction may make "the possibility of deception … self-evident").

54.     In the case at hand, foie gras—fatty liver produced by the induction of disease and at risk of causing disease in consumers—is marked as "Inspected for wholesomeness" despite coming from birds with conditions that qualify the product as adulterated and should merit its condemnation. This labeling is misleading to

COMPLAINT FOR INJUNCTIVE, DECLARTORY, AND MANDAMUS RELIEF - 16

1 consumers who would not otherwise think that such a product would be afforded
2 the USDA's guarantee of wholesomeness. Defendants' failure to respond to
3 Plaintiff's Petition has allowed this deception to continue for an unreasonable
4 length of time.

5    55.    If an agency fails to respond to a petition within a "reasonable time,"
6 courts will direct the agency to take action by either proceeding with a rulemaking,
7 or issuing a denial. 5 U.S.C. § 555(b) (providing that "within a reasonable time, each
8 agency shall proceed to conclude a matter presented to it"); *see also Nader v. F.C.C.*,
9 520 F.2d 182, 206 (D.C. Cir. 1975). Furthermore, an agency cannot insulate itself
10 from judicial review by failing to take action rather than issuing a denial. *See*
11 *Mountain States Legal Found. v. Andrus*, 499 F. Supp. 383, 396 (D.C. Wyo. 1980)
12 (finding agencies' inaction involving accepting, rejecting, or otherwise speaking with
13 regards to oil and gas leases did not excuse it from notifying Congress of its
14 withdrawal of the lands in question or from affirmatively instituting an action on
15 the lease applications).

## CAUSE OF ACTION

### COUNT I: Unreasonable Delay Under The Administrative Procedure Act

56.    Plaintiffs repeat and incorporate herein by reference each of the allegations set forth above.

57.    The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500-706, provides for judicial review to compel agency action if it is delayed unreasonably (§

COMPLAINT FOR INJUNCTIVE, DECLARTORY, AND MANDAMUS RELIEF - 17

706(1)), and grants judicial review to a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." *Id.* at § 702. "Agency action" includes the "failure to act." *Id.* at § 551(13).

58.     When unreasonable delay occurs, courts may "compel agency action unlawfully withheld or unreasonably delayed," and "hold unlawful and set aside agency action, findings, and conclusions found to be…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at § 706(1); 706(2)(A).

59.     The APA also requires that agencies give "prompt notice" if they deny a petition and, "[e]xcept in affirming a prior denial or when the denial is self-explanatory," give "a brief statement of the grounds for denial." *Id.* at § 555(e).

60.     Defendants USDA and FSIS have a duty to respond timely to Plaintiff's Petition. *See* 5 U.S.C. § 555(b).

61.     Despite this statutorily imposed mandate, the Defendants have failed to initiate rulemaking procedures or otherwise respond to Plaintiff's Petition. This four-year delay is beyond the bounds of ordinary, reasonable response time for an agency under the APA.

62.     Plaintiff is informed and on that basis alleges that the USDA will continue to fail to respond to Plaintiff's Petition so that ALDF will continue to suffer both monetary and informational harm, for which there is no remedy at law.

63.     Defendants' violation is ongoing. Their allowance of the USDA legend of inspection, and failure to require foie gras producers to affix a warning that such poultry products are made from diseased animals, suggest to consumers that foie

COMPLAINT FOR INJUNCTIVE, DECLARTORY, AND MANDAMUS RELIEF - 18

gras is wholesome. Were the USDA to promulgate regulations that required disclosures on foie gras labeling about the product's origin, consumers would be able to accurately identify and purchase only those products that they feel safe eating.

64. Due to Defendants' failure to respond within a "reasonable time," this Court should compel the agencies to act. 5 U.S.C. § 706(1); *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 76-77 (D.C. Cir. 1984) (finding that "section 706(1) coupled with section 555(b) does indicate a congressional view that agencies should act within reasonable time frames and that courts designated by statute to review agency actions may play an important role in compelling agency action that has been improperly withheld or unreasonably delayed").

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

65. A declaratory judgment that the Defendants' inaction in response to the Plaintiff's Petition constitutes "unreasonable delay" in violation of the Administrative Procedure Act;

66. An order enjoining Defendants from further delay in responding substantively to the Plaintiff's Petition regarding foie gras labeling and requiring a response within 60 days;

67. An award of attorney's fees and costs incurred in the prosecution of this action; and

68. Any other relief this court finds just and proper.

COMPLAINT FOR INJUNCTIVE, DECLARTORY, AND MANDAMUS RELIEF - 19

| | |
|---|---|
| Dated: November 5, 2015 | /s/Christopher A. Berry |
| | Christopher A. Berry (CBN 283987) |
| | ANIMAL LEGAL DEFENSE FUND |
| | 170 E. Cotati Ave. |
| | Cotati, CA 94931 |
| | cberry@aldf.org |
| | (707)795-2533 |

COMPLAINT FOR INJUNCTIVE, DECLARTORY, AND MANDAMUS RELIEF - 20